PAEZ, Circuit Judge,
dissenting.
I respectfully dissent. I agree with the majority that we have recognized that “Faretta ‘clearly established’ that a self-representation motion made ‘weeks before trial’ is timely.” Mem. at 1-2. I would *317 hold, however, that because Faultry made his request for self-representation weeks before trial, and because there is no dispute that Faultry’s request was “knowing and intelligent,” the state court’s determination was contrary to Faretta’s timeliness rule. I am guided in that conclusion by Moore v. Calderon, 108 F.3d 261 (9th Cir.1997), which I believe is controlling here. There, we recognized that the relevant facts were “identical to those in Far-etta. Like Faretta, Moore made his request “weeks before trial.’” Id. at 265. After noting that “[i]t is undisputed that Moore’s waiver of his right to counsel was knowing and intelligent,” we held that “[b]y failing to grant Moore’s timely request, the trial court abridged Moore’s right to self-representation under the Sixth Amendment.” Id.
The majority ignores Moore’s Faretta analysis because, it explains, we granted habeas relief under an AEDPA framework that the Supreme Court later abrogated in Williams v. Taylor, 529 U.S. 362,120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Mem. at 2 n. 1. Although the Supreme Court abrogated the distinction we had drawn between the two standards for habeas relief in 28 U.S.C. § 2254(d)(1), there is nothing in Williams that suggests our application of the “contrary to” prong in Moore’s Faretta claim was erroneous.
In Moore, which we decided before Williams, we analyzed the timeliness of Moore’s Faretta request under only the “contrary to” prong of § 2254(d)(1), and not under the “unreasonable application” prong. Moore, 108 F.3d at 265 n. 3. Our understanding at that time was that the “contrary to” language governed questions of law, while the “unreasonable application of’ language governed mixed questions of law and fact. Id. Williams made clear that this dichotomy was incorrect. The Court proceeded to explain that a state court decision is “contrary to” Supreme Court precedent “if the state court arrives at a conclusion opposite to that reached by th[e] Court on a question of law,” or if it “confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to” its own. Williams, 529 U.S. at 405,120 S.Ct. 1495. We have explained since Williams that this was the issue on which Williams abrogated Moore. See Baker v. City of Blaine, 221 F.3d 1108, 1110 n. 2 (9th Cir.2000) (explaining that Moore was mistaken because both “contrary to” and “unreasonable application of’ apply to both questions of law and mixed questions of law and fact following Williams l,[1]
Although the footnote in Moore explaining why we analyzed the habeas petition under the “contrary to” prong is no longer good law, we did not err in analyzing Moore’s habeas petition under the “contrary to” prong. See Williams, 529 U.S. at 405-06, 120 S.Ct. 1495 (explaining that questions of law and factual questions may both be analyzed under the “contrary to” prong). Further, our “contrary to” analysis of Moore’s Faretta claim was consistent with Williams ’ “contrary to” methodology. In Moore, we explained that the facts before us were “materially indistinguishable” from those in Faretta, but that the state court “arrive[d] at a result opposite to” that in Faretta. Williams, 529 U.S. at 405, 120 S.Ct. 1495; Moore, 108 F.3d at 265. Thus, although Williams abrogated the distinction we had drawn between the two standards in 28 U.S.C. § 2254(d)(1), our analysis in Moore comported with Williams ’ standard for determining when a state court decision is contrary to established Supreme Court law.
*318 Because Williams did not abrogate Moore’s application of Faretta, we are “bound” by its enunciation of “clearly established Supreme Court law.” Marshall v. Taylor, 395 F.3d 1058, 1061 n. 15 (9th Cir.2005). Moore stated that it was “contrary to” the law “clearly established by Faretta ” not to grant the writ where the facts are “identical to those in Faretta.” 108 F.3d at 265. The facts that made Moore’s situation identical to Faretta’s were that Moore made his request for self-representation “weeks before trial,” and that there was no dispute that Moore’s waiver was “knowing and intelligent.” Id. Under Moore, when all these facts exist, such a request for self-representation is timely under Faretta.
Here, there is no dispute that Faultry’s waiver was knowing and intelligent. The only question that remains is whether Moore made his request weeks before trial. Faultry’s trial was originally scheduled for January 15, 2008. On January 16, Faultry made his request for self-representation. At the January 16 hearing, it was clear to the trial judge that Faultry’s trial would not begin until Faultry’s counsel finished another trial, which had not yet started and would “probably take no more than about two weeks.” Thereafter, the trial judge denied Faultry’s Faretta motion. Trial did not actually begin until “almost four months later.” On this record, which is not materially different from the circumstances in Moore, Faultry in fact made his motion “weeks before trial.” Like Moore, who requested self-representation days after trial had been originally scheduled but two weeks before trial actually began, Faultry made his motion weeks before trial. See Moore, 108 F.3d at 262-63. The state court’s denial of his request was “contrary to” the Supreme Court’s decision in Faretta.
For the above reasons, I would reverse the district court’s denial of habeas relief.

. Notably, Williams does not discuss Faretta whatsoever.